IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOSEPH COPELAND, JR.,

      **Plaintiff,**                            Case No. 2:09-cv-589
                                           JUDGE GREGORY L. FROST
    v.                                       Magistrate Judge Terence P. Kemp

**SHERIFF JIM KARNES, et al.,**

      **Defendants.**


TODD E. TRIPLETT,

      **Plaintiff,**                            Case No. 2:09-cv-603
                                           JUDGE GREGORY L. FROST
    v.                                         Magistrate Judge Terence P. Kemp

**THE COUNTY OF FRANKLIN,
OHIO, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendants County of Franklin, Ohio, Franklin County Commissioners and Sheriff Jim Karnes[1] (together "Franklin County Defendants") (ECF No. 38[2]), Plaintiff Copeland's Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 52), Plaintiff Todd Triplett's Motion

---

[1] Because Sheriff Karnes is deceased, Rule 25(d)(1) of the Federal Rules of Civil Procedure provides for automatic substitution of his successor in office.

[2] The numbering of the docket entries referred to in this Opinion and Order will be from the 2:09-cv-589 case unless otherwise indicated.

1

[*sic*] Contra Defendants' Motion for Summary Judgment (ECF No. 58[3]), the Reply of the Franklin County Defendants to Plaintiff Triplett's Memorandum Contra filed May 4, 2011 (ECF No. 61[4]), and the Reply of the Franklin County Defendants to Plaintiff Copeland's Memorandum in Opposition to Defendants' Motion for Summary Judgment filed June 12, 2011 (ECF No. 54).

For the reasons that follow the Court **GRANTS** the Franklin County Defendants' Motion for Summary Judgment.

### I.  Background

Joseph Cantwell and Phillip Barnett were Franklin County Deputy Sheriffs employed as corrections officers at the Franklin County Correctional Center ("Franklin County Jail") at the time of all instances alleged in this action.  On approximately February 20, 2009, Deputy Cantwell and Deputy Barnett were distributing bologna sandwiches to various inmates at the Franklin County Jail.  These two deputies took one of the bologna sandwiches into Plaintiff Todd E. Triplett's cell and had Triplett place his penis on or above it.  The deputies took a photograph of Triplett's penis and the sandwich with a cellular telephone.  Cantwell and Barnett then took the sandwich and gave it to another inmate, Plaintiff Joseph Copeland, Jr.  After Plaintiff Copeland had eaten most of the sandwich, the officers showed him the picture of Triplett's penis on or over the sandwich and asked him "How does Todd Triplett's dick taste, bitch?"  (Barnett Dep. at 24.)

Deputies Cantwell and Barnett claim that their actions were a "practical joke."  These deputies contend that it was a custom and practice of the Franklin County Sheriff's Department

---

[3]This document was filed only in 2:09-cv-603.

[4]This document was filed only in 2:09-cv-603.

to have the corrections officers joke with the inmates. Cantwell and Barnett claim that this type of joking was encouraged by their supervisors in order to build camaraderie with the inmates.

The Franklin County Sheriff's Department investigated the bologna sandwich incident and found that Deputy Cantwell and Deputy Barnett had violated Department policies and regulations, including the following: AR 102.2 - Obedience to Laws and Ordinances, AR 102.43 - Malfeasance, AR 102.29 - Unbecoming Conduct, AR 102.9 - Neglect or Inattention to Duty, AR 116.2 - Sexual Harassment, AR 101- Mission Statement and Core Values. The Department terminated both Cantwell and Barnett as a result of the bologna sandwich incident.

Inmates Copeland and Triplett each filed complaints in the Franklin County, Ohio Court of Common Pleas against the Franklin County Defendants and against former Deputies Cantwell and Barnett in their individual and official capacities. The defendants removed the cases to this Court. This Court then consolidated the two cases. All of the defendants have moved for summary judgment. This Opinion and Order considers the Franklin County Defendants' Motion for Summary Judgment on all of the claims filed against them and on the official capacity claims filed against Cantwell and Barnett. That motion is ripe for review.

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

### III. Discussion

Plaintiffs have filed federal law and state law claims against the Franklin County Defendants and against Defendants Cantwell and Barnett.

**A. Federal Law Claims**

Plaintiffs have filed their federal law claims under 42 U.S.C. § 1983. A Section 1983 plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**1. Sheriff Karnes, Deputy Barnett, and Deputy Cantwell - Official Capacity Claims**

Plaintiff has filed official capacity claims against Sheriff Karnes, former Deputy Barnett, and former Deputy Cantwell under 42 U.S.C. § 1983. Official capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Under the Supreme Court's holding in *Monell*, [a governmental entity] is liable for an employee's action if the employee executed "a government policy or custom," or the employee's acts "may fairly be said to represent official policy." *Id.* The plaintiff must establish that the governmental entity "itself is the wrongdoer," *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985), by showing that "the [governmental entity] engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).

Plaintiff Triplett argues the moving force behind Cantwell's and Barnett's having Triplett place his penis on or over a bologna sandwich, photographing it, and then subsequently serving the sandwich to Copeland was the "policy" or "custom" of "widespread malicious and assaultive conduct that was rampant throughout the jail where corrections officers would routinely assault inmates [and] subject them to degradation, humiliation and pain." (ECF No. 52 at 5.) Plaintiff Copeland contends:

> Sheriff Karnes created and maintained a custom and culture in the county jail which afforded the deputy sheriffs the opportunity to ignore the rules, create their own rules, and allow their superiors- deputy supervisors who worked directly under Sheriff Karnes- to intimidate inmates, brutalize inmates, disregard rules, and maintain a code of silence in the jail among deputies with regard to turning a blind eye to what was going on.

(ECF No. 58[5] at 5.)

The evidence before the Court, however, does not support Plaintiffs' contentions.

Plaintiffs cite to a number of incidents as relayed by Defendants Cantwell and Barnett to support their claim that Cantwell and Barnett acted pursuant to a policy or custom of assaulting inmates. That evidence fits into two categories: alleged assaultive conduct and conduct that disregards the rules.

With regard to the first category, Defendant Cantwell describes a "Corporal Bryant" kicking an inmate and testifies that another person told him of Bryant assaulting an inmate. Defendant Cantwell testified that deputies routinely instigated physical confrontations with inmates and that there was a code of silence among the officers about this type of conduct. When pressed, however, Cantwell was unable to testify with any amount of specificity, stating that "[he]'d hear stories" about these physical confrontations, or that "some guys on C Company . . . went back and roughed him up back there a little bit," or that "guys have been handcuffed to commodes, you know, for hours," or that he does not "remember the guy's name" but he grabbed an inmate "and jerked him towards him, and the guy ended up banging his head off that pillar there by the phones and cameras," or that there has "been a host" of supervisors over the years that encouraged the wrong behavior but that he "can't remember any like specifics[.]"

---

[5]This document was filed only in 2:09-cv-603.

6

(Cantwell Dep. at 62-68.)

Defendant Barnett testified with a similar lack of specificity.  Barnett testified about conduct that other deputies would "brag" about, such as throwing water inside a rowdy inmates' cell, spitting chewing tobacco inside an inmate's cell, or putting fans on inmates in "pickle suits."  (Barnett Dep. at 32-33, 64.)  Barnett admits that he did not personally observe any of this behavior, but only heard about it.  He also testified as to "rumors" of the inappropriate conduct of deputy sheriffs who worked outside of the jail.  (Barnett Dep. at 61.)  As to events Barnett witnesses, he recalled that in 2007 he walked into a room where a deputy was holding an inmate against the wall and another deputy was punching the inmate in the stomach.  He did not observe anything that occurred prior to this incident nor does he know of anything that may have occurred after this incident.  Barnett also testified that a certain deputy hired general population inmates to physically assault protective custody inmates.  Barnett, however, also stated that the deputy in question was fired, and that he could not think of any other incidents where this occurred.

Leaving aside for a moment the hearsay issues with the testimony upon which Plaintiffs' rely, Defendant Cantwell's and Defendant Barnett's testimony does not provide evidence of rampant, widespread assaultive conduct by the deputies at the Franklin County Jail that "may fairly be said to represent official policy."  *Monell*, 436 U.S. at 694.  The only incident that could be construed as an assault that may not have been dealt with appropriately by the Sheriff's Department is the incident where a deputy was observed actually punching an inmate. Plaintiffs present *no* evidence from the individuals who were allegedly involved in this incident (or for that matter evidence from the individuals involved in most of the other incidents about which

Plaintiffs testify).  Even if, however, the Court were to accept as true that these two deputies assaulted an inmate, this isolated incident is simply not sufficient to show a policy or custom of assaulting inmates.

Further, Plaintiffs evidence does not reflect a work environment where assaultive behavior was encouraged and/or tolerated.  Indeed, Plaintiffs actually testify to the opposite, *i.e.*, testifying about investigations and discipline given to the deputies whose conduct could be considered assaultive.  Plaintiffs admit that Corporal Bryant, the one individual about whom Cantwell specifically testified seeing kick an inmate, was under investigation by Internal Affairs for uses of force.  Also, Plaintiffs admit that the deputy who hired an inmate to assault another inmate was terminated.  If it were the Franklin County Sheriff Department's policy or custom to permit this type of conduct there would be no investigation into it nor terminations because of it.  The evidence before the Court indicates that the policy and/or custom of the Franklin County Sheriff's Department was to investigate and discipline employees who used, or allegedly used, excessive force on inmates at the Franklin County Jail.

With regard to the evidence presented that falls into the category of conduct that disregards the rules.  Barnett testified that he once observed a deputy "launch" the inmates food through the tray slot because the inmate was too slow to take it and once observed a deputy pour milk on an inmates food tray before serving it.  About these two incidents, Barnett testified that it was not a common occurrence and usually happened to "inmates who were getting out of line[.]"  (Barnett Dep. at 35.)

Finally, Plaintiff Triplett relies upon the testimony of Defendants Cantwell and Barnett that "confirms that Defendants had a policy on cell phone usage that was widely ignored or only

8

sporadically enforced when an 'incident' involving a cell phone occurred." (ECF No. 58 at 6.[6])
Disregarding a cell phone policy by some deputies, however, does not indicate the Sheriff's Department tolerates assaultive behavior that violates excessive force policies. Indeed, as the Franklin County Defendants convincingly argue, according to Triplett's logic, a failure to follow the policy that a deputy must shine his boots could be construed as a prelude to unconstitutional conduct.

The Court finds that the testimony of Defendant Cantwell and Defendant Barnett is an obvious attempt to justify their conduct by claiming that "everyone does it" and, not only does everyone else engage in improper conduct, it is the policy and custom of the entire Sheriff's Department. The evidence they present, however, falls far short of showing that "the [Sheriff's Department] engaged in a 'policy or custom' that was the 'moving force' behind the [alleged] deprivation of [Plaintiffs'] rights." *Powers*, 501 F.3d at 607 (citing *Monell*, 436 U.S. at 694).

The Court concludes that, even when accepting all of the evidence presented by Plaintiffs as true, and drawing all justifiable inferences in their favor, the evidence does not support the accusation that the type conduct engaged in by Defendants Cantwell and Barnett is accepted or ongoing at the Franklin County Jail. In spite of attempts to the contrary, Plaintiffs have failed to provide any evidence to support the contention that their conduct was anything other than a violation of the Sheriff's Department's rules and policies carried out by two deputies who were terminated for their actions. Plaintiffs have failed to raise any genuine issue of material fact as to whether there was a policy or custom at the Franklin County Jail that encouraged or permitted the type of behavior in which they engaged–let alone that the alleged policy was the moving

---

[6]This document was filed only in 2:09-cv-603.

force behind the former Deputies' conduct.  Thus, Sheriff Karnes, former Deputy Barnett, and former Deputy Cantwell are entitled to summary judgment on the official capacity claims filed against them.

### 2. Sheriff Karnes - Supervisory Claim

Plaintiffs filed a claim against Sheriff Karnes in his capacity as a supervisor to Defendants Cantwell and Barnett.  As discussed *supra*, in a Section 1983 action, liability cannot be based on a theory of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "Nor can the liability of supervisors be based solely on the right to control employees, *Bellamy*, 729 F.2d at 421, or 'simple awareness of employees' misconduct,' *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421."  *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006).

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)).  "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.' "  *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Plaintiffs have presented no evidence that Sheriff Karnes engaged in any active unconstitutional behavior.  There is no dispute that he was not present at the Franklin County Jail on the day in question.  Further, there is no evidence that shows that he implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

Indeed, the opposite. The officers were investigated and terminated for their behavior. Consequently, Sheriff Karnes is entitled to summary judgment on the Section 1983 supervisory capacity claim filed against him.

### 3. Franklin County

The Franklin County Defendants argue that they are entitled to summary judgment on the claims filed against Franklin County because Franklin County is not *sui juris*, lacking the capacity to sue or be sued. This argument is not well taken.

The Franklin County Defendants rely on Section 301.22 of the Ohio Revised Code for the proposition that the only counties that can be sued or are capable of suing are those that adopt a charter or alternative form of government, which Franklin County has not done. *See* Ohio Rev. Code Ann. § 301.22. This Court recently explained in detail in *Stack v. Karnes*, that a county's lack of capacity to sue or be sued under Section 301.22 does not preclude the ability of such county to become amenable to a Section 1983 claim pursuant to *Monell*. 750 F. Supp. 2d 892 (S.D. Ohio 2010). Here, as discussed *supra*, Plaintiffs allege a claim under *Monell*. Consequently, Franklin County is amenable to suit for that claim. However, the Court has determined that the Franklin County Defendants are entitled to summary judgment on Plaintiffs' *Monell* claim.

### 4. The Franklin County Board of Commissioners

Plaintiffs' claims filed against the Franklin County Board of Commissioners for alleged injuries they suffered while confined at the Franklin County Jail fail as a matter of law. Under Ohio law, the sheriff, not the Board of Commissioners, is in charge of the county jail and all persons confined therein. Ohio Rev. Code § 341.01. The sheriff "shall keep such persons safely,

attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction." *Id.* The Board of Commissioners have no duty to control the sheriff in keeping a jail safe, and the fact that Ohio Revised Code § 307.01(A) designates the Board of Commissioners as the agency to determine the necessity of jail construction does not mean that such board has any control over the operation of a county jail. *Saunders v. McFaul*, 71 Ohio App. 3d 46, 43 (Ohio Ct. App. 1990).

Nor may Plaintiff rely upon a theory of *respondeat superior* to impose liability on the Board of Commissioners. *See Miller v. Calhoun County*, 408 F.3d 803, 813-14 (6th Cir. 2005) (county may be liable only where its policy or custom causes the constitutional violation and, under Michigan law (like Ohio law), it is the sheriff who enjoys final policymaking authority over a county correctional facility). *See also Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005) (affirming this Court's grant of summary judgment for defendant county commissioners where commissioners did not participate in the allegedly unconstitutional searches and seizures of plaintiff's vehicle and residence by sheriff deputies); *Ridgeway v. Union County Comm'rs*, 775 F. Supp. 1105, 1109-10 (S.D. Ohio 1991) (fact that county commissioners are responsible for funding of sheriff's department and for administration of county government does not establish liability under *respondeat superior* and where recovery is based solely on such a theory, plaintiff fails to state a claim).

Accordingly, the Franklin County Board of Commissioners is entitled to summary judgment on all of the claims filed against it.

### 5. Conclusion - Federal Law Claims

The Court concludes that, even when viewing the evidence in the light most favorable to

Plaintiffs and drawing all justifiable inferences in their favor, no reasonable jury could return a verdict for them on their federal law claims filed against the Franklin County Defendants. Consequently, the Court **GRANTS** the Franklin County Defendants' Motion for Summary Judgment as it relates to those claims.

**B. State Law Claims**

Because the Court disposes of all of Plaintiffs' federal claims filed against the Franklin County Defendants by this decision, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the state law claims filed agaisnt these defendants. Consequently, Plaintiffs' state law claims are **DISMISSED** without prejudice.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### IV.  Conclusion

Based on the foregoing, the Court **GRANTS** the Franklin County Defendants' Motion for Summary Judgment as it relates to Plaintiffs' federal law claims and **DISMISSES** without prejudice Plaintiffs' state law claims filed against these defendants.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**