**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSEPH COPELAND, JR.,**

      **Plaintiff,**                                  **Case No. 2:09-cv-589**
                                                              **JUDGE GREGORY L. FROST**
    v.                                                   **Magistrate Judge Terence P. Kemp**

**SHERIFF JIM KARNES, et al.,**

      **Defendants.**


**TODD E. TRIPLETT,**

      **Plaintiff,**                                  **Case No. 2:09-cv-603**
                                                              **JUDGE GREGORY L. FROST**
    v.                                                   **Magistrate Judge Terence P. Kemp**

**THE COUNTY OF FRANKLIN, OHIO, et al.,**

      **Defendants.**

**<u>OPINION AND ORDER</u>**

      This matter is before the Court on Defendant Joseph Cantwell's Motion for Summary Judgment (ECF No. 35[1]), Defendant Phillip Barnett's Motion for Summary Judgment (ECF No. 36), Plaintiff Copeland's Memorandum in Opposition to Defendants' Motions for Summary Judgment (ECF No. 52), Plaintiff Todd E. Triplett's Motion [sic] Contra Defendants Phillip

---

[1] The numbering of the docket entries used in this Opinion and Order are from the 2:09-cv-589 case unless otherwise indicated.

Barnett's and Joseph Cantwell's Motions for Summary Judgment (ECF No. 57[2]), the Reply Memorandum in Support of Defendant Phillip Barnett's Motion for Summary Judgment (ECF No. 56), and Defendant Joseph Cantwell's Reply Memorandum in Support of Defendant Joseph Cantwell's Motion for Summary Judgment (ECF No. 62).  For the reasons that follow, the Court **DENIES** Defendant Cantwell's Motion for Summary Judgment and **DENIES** Defendant Phillip Barnett's Motion for Summary Judgment.

### I.  Background

Joseph Cantwell and Phillip Barnett were Franklin County Deputy Sheriffs employed as corrections officers at the Franklin County Correctional Center ("Franklin County Jail") at the time of all instances alleged in this action.  On approximately February 20, 2009, Deputy Cantwell and Deputy Barnett were distributing bologna sandwiches to various inmates at the Franklin County Jail.  These two deputies took one of the bologna sandwiches into Plaintiff Todd E. Triplett's cell and had Triplett place his penis on or above it.  The deputies took a photograph of Triplett's penis and the sandwich with a cellular telephone.  Cantwell and Barnett then took the sandwich and gave it to another inmate, Plaintiff Joseph Copeland, Jr.  After Plaintiff Copeland had eaten most of the sandwich, the officers showed him the picture of Triplett's penis on or above the sandwich and asked him "How does Todd Triplett's dick taste, bitch?"  (Barnett Dep. at 24.)

The Franklin County Sheriff's Department investigated the bologna sandwich incident and found that Deputy Cantwell and Deputy Barnett had violated Department policies and regulations and terminated them from their positions.  On April 28, 2009, Sheriff Karnes sent a

---

[2]This document was filed only in 2:09-cv-603.

memorandum to each deputy informing him of his decision:

> This is to advise you that I am removing you from service, effective this date, April 28, 2009, for violating regulations 102.2 Obedience to Laws and Ordinances, 102.43 Malfeasance, 102.29 Unbecoming Conduct, 102.9 Neglect or Inattention to Duty, 116.2 Sexual Harassment, 101 Mission Statement and Core Values for conspiring with Deputy [Barnett or Cantwell], on February 16, 2009, to taint the food of Inmate C by having Inmate T place his penis upon a sandwich to be fed to Inmate C, [using your cell phone] to photograph Inmate T's penis upon the food, giving the sandwich to Inmate C to eat, and, while Inmate C was consuming the sandwich, showing Inmate C the photograph of Inmate T's penis upon the food and advising him the photo was of Inmate T's penis;

(ECF No. 57 at 13, 14.)

Sheriff Karnes added to the memorandum sent to Cantwell:

102.4 Violation of Rules and Regulations or Directives for violating Chief Barrett's directive regarding personal property by bringing a cell phone into the corrections facility; and 116.2 Sexual Harassment for convincing Inmate T to taint the sandwich by putting his penis upon it.

(ECF No. 57 at 13.)

Sheriff Karnes added to the memorandum sent to Barnett:

and 116.2 Sexual Harassment for supporting by your presence and silence the persuasion of Inmate T to taint the sandwich by putting his penis upon it.

(ECF No. 57 at 14.)

Inmates Copeland and Triplett each filed complaints in the Franklin County, Ohio Court of Common Pleas against the County of Franklin, Ohio, the Franklin Board of County Commissioners, and Sheriff James Karnes ("Franklin County Defendants") and against former deputies Cantwell and Barnett in their individual and official capacities. The defendants removed the cases to this Court. This Court then consolidated the two cases. All of the defendants moved for summary judgment.

On August 17, 2011, this Court granted the Franklin County Defendants' Motion for

Summary Judgment on all of the claims filed against them and on the official capacity claims filed against former deputies Cantwell and Barnett.

This Opinion and Order considers Defendant Cantwell's Motion for Summary Judgment and Defendant Barnett's Motion for Summary Judgment, which both address the federal personal capacity claims and the state law claims filed against these two former deputies. These motions are ripe for review.

## II.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

### III. Discussion

Defendants Cantwell and Barnett move for summary judgment on the federal law and state law claims filed against them.

**A.  Federal Law Claims**

Plaintiffs have filed claims under 42 U.S.C. § 1983 against Defendants Cantwell and Barnett in their personal capacity.  A § 1983 plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Section 1983 claims may be filed against individuals in their official or personal capacity.  "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974)).

In the instant action, Plaintiffs claim that Cantwell and Barnett violated the ban on inflicting cruel and unusual punishments provided for by the Eighth Amendment to the United States Constitution.  Defendants Cantwell and Barnett move for summary judgment on Plaintiffs' personal capacity § 1983 claims against them based on qualified immunity and based on their contention that their conduct did not violate the Eighth Amendment.

**1. Qualified Immunity**

"The affirmative defense of qualified, or good faith, immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). Where a defendant moves for summary judgment based on qualified immunity, the "defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* at 311. Once the defendant makes this showing, the burden shifts to the plaintiff, who must show: 1) the facts viewed in the light most favorable to the plaintiff establish that a violation of the plaintiff's constitutional rights occurred and, 2) the constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009).

Whether or not a defendant is entitled to qualified immunity is a question of law. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987). Summary judgment is not appropriate, however, if the question of immunity turns upon a disputed question of fact. *Gardenhire*, 205 F.3d at 311 (citing *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988)).

In the present case, Plaintiffs argue that Cantwell and Barnett are not entitled to qualified immunity because, *inter alia*, their conduct was not within the scope of their discretionary authority. This Court agrees. The purpose of qualified immunity is to protect officials who act when their "duties legitimately require action." *Harlow*, 457 U.S. at 819. Thus, as the Sixth Circuit directs, the preliminary inquiry is whether the official acts for which qualified immunity

6

is asserted were within the scope of the official's discretionary authority. *See Gardenhire*, 205 F.3d at 310-11. "It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted -- the relation of the act complained of to 'matters committed by law to his control or supervision,' . . . which must provide the guide in delineating the scope of the rule which clothes the official acts . . . with immunity[.]" *Neuberger v. Gordon*, 567 F. Supp. 2d 622. 638-39 (D. Del. 2008) (quoting *Barr v. Matteo*, 360 U.S. 564, 573-74 (1959)) (omissions in original). "Yet, 'in order to ensure that public officials are adequately protected from liability, an official's conduct falls within his authority unless a reasonable official in the defendant's position would have known that the conduct was clearly established to be beyond the scope of that authority.' " *Id.* at 639 (quoting *Better Gov't Bureau v. McGraw (In re Allen)*, 106 F.3d 582, 594 (4th Cir. 1997)).

Defendants argue that they were acting within the scope of their discretionary authority when they had Triplett place his penis on or over a bologna sandwich, photographed it, served the sandwich to Copeland, and showed the picture to Copeland after he had eaten most of the sandwich. Specifically, Defendants contend:

> It was a custom and practice of the Franklin County Sheriff's Office for officers to joke with the inmates. In fact, it was encouraged by the supervisors in order to build camaraderie with the inmates. Defendant Cantwell's [and Barnett's] conduct was not motivated by any desire to subject the plaintiffs to any harm, nor was it motivated by any notion of bad faith or malicious intent. Furthermore, defendant[s] Cantwell [and Barnett] had no knowledge that either plaintiff had any medical condition that would subject them to greater harm as a result of the prank. Alternatively, [Defendants'] conduct was undertaken in compliance with the customs and policies of the Franklin County Sheriff's Office, and it was entirely motivated by an effort to 'build camaraderie' with the inmates.

(ECF No. 35 at 3) (citing to Barnett's and Cantwell's affidavits).

Defendants' arguments are not well-taken.

7

Even accepting as true Defendants' contention that the Franklin County Sheriff's Department had a custom and policy that encouraged officers to joke with the inmates, Defendants' conduct here does not fall within that custom and policy. Any reasonable officer in Cantwell's or Barnett's position would have known that the conduct at issue here was clearly established to be beyond the scope of their discretionary authority. Under no circumstances can the Court see how this conduct could build camaraderie between the deputies and the inmates. Moreover, Sheriff Karnes' termination memoranda sent to each of the former deputies shows that their conduct was beyond the scope of their discretionary authority, violating numerous regulations that outlined the parameters of their authority.

Accordingly, the Court concludes that Defendants have failed to meet their burden of showing that their acts were within the scope of their official discretionary authority. Thus, Defendants are not entitled to the affirmative defense of qualified immunity.

**2. Constitutional Violation**

"On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Ky. v. Graham*, 473 U.S. at 166 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). *See also Hafer v. Melo*, 502 U.S. 21, 29 (1991) (noting that liability under § 1983 for acts taken under color of state law may be imposed on acts both within as well as outside an official's discretionary authority).

Plaintiffs here claim that Defendants Cantwell and Barnett violated Plaintiffs' constitutional right to be free from cruel and unusual punishments. The Sixth Circuit has explained that, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v.*

*Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  The circuit court went on to explain:

> "The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, 'proscribe[s] more than physically barbarous punishments. *Estelle v. Gamble*, 429 U.S. 97, 102, 50 L. Ed. 2d 251, 97 S. Ct. 285 [1976].  It prohibits penalties that are grossly disproportionate to the offense, *Weems v. United States*, 217 U.S. 349, 367, 54 L. Ed. 793, 30 S. Ct. 544 [1910], as well as those that transgress today's " 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.' " *Estelle v. Gamble*, [429 U.S. at 102] quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968).

*Id.* at 954-55 (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978)) (alterations in original).

In the case *sub judice*, the evidence of Cantwell's and Barnett's conduct certainly could be determined to "transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Id.*  Consequently, this Court cannot say that the evidence is so one-sided that Defendants must prevail as a matter of law.  Indeed, the evidence is such that a reasonable jury could return a verdict for the nonmoving parties.  Thus, Cantwell and Barnett are not entitled to judgment as a matter of law on Plaintiffs' personal capacity § 1983 claims.

Accordingly, the Court **DENIES** Defendant Joseph Cantwell's Motion for Summary Judgment and Phillip Barnett's Motion for Summary Judgment as they relate to Plaintiffs' personal capacity § 1983 claims.

**B. State Law Claims**

Plaintiffs allege several state law claims for relief against Defendants Cantwell and Barnett.  These defendants move for summary judgment on all of the state law claims, contending that they are entitled to statutory immunity from those claims pursuant to Section 2744.03(A)(6) of the Ohio Revised Code.

Ohio law provides immunity for employees of political subdivisions under the Ohio Revised Code § 2744.03(A)(6).  This provision provides that a political subdivision employee is

immune from liability in a civil action for claims arising from the employee's official actions unless one of three exceptions applies, only two of which are relevant here: (1) the employee's acts were manifestly outside the scope of employment or official responsibilities; or (2) the acts were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). *See also Rankin v. Cuyahoga County Dep't of Children & Family Servs.*, 118 Ohio St. 3d 392, 398, (Ohio 2008) (citation omitted).

> [Ohio Revised Code] Chapter 2744 does not define the type of employee acts that fall "manifestly outside the scope of employment or official responsibilities" under R.C. 2744.03(A)(6)(a). However, Ohio courts have generally drawn from agency-law principles to hold that "conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Jackson v. McDonald* (2001), 144 Ohio App.3d 301, 307, 760 N.E.2d 23, 760 N.E.2d 24; *Chesher v. Neyer* (C.A.6, 2007), 477 F.3d 784, 797. "In the context of immunity, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment.'" *Jackson* at 307. "It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment." *Id.*

*Curry v. Vill. of Blanchester*, Nos. CA2009-08-010, CA2009-08-012, 2010 Ohio App. LEXIS 2855, at *16-17 (Ohio Ct. App. July 19, 2010) (finding "that White's 'titties' comment was made within the scope of his employment; the affair comment, however, was not").

Thus, the issue is whether Defendant Cantwell's and Defendant Barnett's conduct fits into either exception to their entitlement to statutory immunity. That is, first, was their conduct manifestly outside the scope of their employment (which is determined by whether their conduct was motivated by actual malice or other situations giving rise to punitive damages). Or, second, whether the acts were done with malicious purpose, in bad faith, or in a wanton or reckless manner. Both Cantwell and Barnett provide affidavits averring that their acts were not motivated by malice, ill-will, or an intent to do harm. Indeed, both defendants testified that they

regret their choice to engage in the conduct that is at issue here.  Defendant Cantwell also argues that:

> In this case, Cantwell played a joke.  It was boorish and low, but it was a joke nevertheless.  Cantwell's intent was not to harm, and Triplett, who never shied away from complaining about his treatment, never complained about this joke. Cantwell's joke was not performed with the degree of culpability necessary to strip him of his statutory immunity.

(ECF No. 62[3] at 5.)

However, the testimony to which Cantwell refers is conflicting.  Triplett contends that he *did* oppose putting his penis on the bologna sandwich and testified that Defendants threatened to place him in solitary confinement if he did not do so.  Further, the parties also disagree as to whether Defendants forced/asked Triplett to place his penis *on* the sandwich or *over* the sandwich, apparently differentiating between the harm that this distinction creates.  Finally, the conduct itself, as Plaintiffs argue, could indicate a malicious motivation regardless of the affidavit testimony provided by Defendants.

It is the province of the jury to determine the credibility of Cantwell's and Barnett's testimony related to their motivation and to determine the facts that occurred on the day in question.  If the jury determines that Cantwell's and/or Barnett's conduct, as ascertained by the jury, was manifestly outside the scope of their employment or was motivated by malicious purpose, done in bad faith or in a wanton or reckless manner, then Cantwell and Barnett will not be entitled to statutory immunity from the state law claims filed against them.  *See e.g., Thompson v. Smith*, No. 2010-T-0047, 2011 Ohio App. LEXIS 1400 (Ohio Ct. App. March 31, 2011) (evaluating jury instruction regarding whether the Ohio immunity statute, Ohio Rev. Code

---

[3]This document was filed only in 2:09-cv-603.

§ 2744.03, applied to the defendants).  If, however, the jury determines that Cantwell's and/or Barnett's conduct was not manifestly outside the scope of their employment or was not motivated by malicious purpose, done in bad faith or in a wanton or reckless manner, then Defendants will enjoy the immunity provided for in this Ohio statute.  The jury would then be required to determine if Plaintiffs proved any of the state law claims they have filed against these two defendants.

Accordingly, the Court **DENIES** Defendant Joseph Cantwell's Motion for Summary Judgment and Phillip Barnett's Motion for Summary Judgment as they relate to Plaintiffs' state law claims and to the issue of whether Defendants are entitled to statutory immunity from those state law claims.

### IV.  Conclusion

For the reasons set forth above, the Court **DENIES** Defendant Joseph Cantwell's Motion for Summary Judgment (ECF No. 35) and **DENIES** Defendant Phillip Barnett's Motion for Summary Judgment (ECF No. 36).

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**